IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEALTHY GULF; SIERRA CLUB; and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BERNHARDT, Secretary, U.S. Department of the Interior; JOSEPH BALASH, Assistant Secretary, Land and Minerals Management; U.S. DEPARTMENT OF THE INTERIOR; and BUREAU OF OCEAN ENERGY MANAGEMENT, <br><br> Defendants. | No. 1:19-cv-00707-RBW |

**MOTION OF THE AMERICAN PETROLEUM INSTITUTE FOR LEAVE TO INTERVENE AS A DEFENDANT**

May 21, 2019

Steven J. Rosenbaum
  D.C. Bar No. 331728
Bradley K. Ervin
  D.C. Bar No. 982559
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
Fax: (202) 662-6291
srosenbaum@cov.com

*Attorneys for Applicant for Intervention*
*American Petroleum Institute*

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................................. 1

    A.    Plaintiffs' Legal Challenge. ................................................................................. 1

    B.    API's Interests in Plaintiffs' Legal Challenge. ..................................................... 2

I.    API IS ENTITLED TO INTERVENE AS OF RIGHT. ..................................................... 3

    A.    API Has Timely Moved For Intervention. ............................................................ 4

    B.    API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding. ............................................................................ 4

    C.    API's Interests Will Not Be Adequately Protected By Plaintiffs Or Defendants. ........................................................................................................... 10

II.    IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b). ............................................................................ 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Alaska v. Andrus*,
  580 F.2d 465 (D.C. Cir. 1978) .................................................................................. 10

*Amgen, Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2004) .................................................................................... 8

*Apotex, Inc. v. FDA*,
  508 F. Supp. 2d 78 n.2 (D.D.C. 2007) ...................................................................... 11

*Atlantic States Legal Found., Inc. v. EPA*,
  325 F.3d 281 (D.C. Cir. 2003) .................................................................................... 7

*Bennett v. Spear*,
  520 U.S. 154 (1997) .................................................................................................... 8

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ...................................................................................... 5

*California v. Watt*,
  668 F.2d 1290 (D.C. Cir. 1981) .................................................................................. 9

*California v. Watt*,
  712 F.2d 584 (D.C. Cir. 1983) .................................................................................... 9

*City of Waukesha v. EPA*,
  320 F.3d 228 (D.C. Cir. 2003) ................................................................................ 3, 4

*Clarke v. Sec. Indus. Ass'n*,
  479 U.S. 388 (1987) .................................................................................................... 8

*Conservation Law Found. of New England v. Mosbacher*,
  966 F.2d 39 (1st Cir. 1992) ........................................................................................ 9

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
  563 F.3d 466 (D.C. Cir. 2009) .................................................................................... 9

*Ctr. for Sustainable Economy v. Jewell*,
  779 F.3d 588 (D.C. Cir. 2015) .................................................................................... 3

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*,
  684 F.3d 1242 (11th Cir. 2012) .................................................................................. 3

*Defenders of Wildlife v. Minerals Management Serv.*,
  No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) ...................................... 3

*\*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) .................................................................................. 11

*Diné Citizens Against Ruining our Env't v. Jewell*,
  No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) .................................... 10

\*Authorities upon which movant chiefly relies

*Fresno Mobile Radio, Inc. v. FCC*,
  165 F.3d 965 (D.C. Cir. 1999) ............................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*,
  528 U.S. 167 (2000) ............................................................................................................... 3

*\*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ........................................................................... 3, 6, 7, 8, 10, 11

*Gulf Restoration Network, et al. v. Zinke, et al.*,
  No. 18-cv-01674-RBW, Dkt. No. 35 (D.D.C. Dec. 7, 2018) ................................................ 1, 3

*Humane Society of the U.S. v. Clark*,
  109 F.R.D. 518 (D.D.C. 1985) ............................................................................................... 9

*Hunt v. Washington State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................... 4

*Idaho Power Co. v. FERC*,
  312 F.3d 454 (D.C. Cir. 2002) ............................................................................................... 7

*In re City of Fall River, Ma.*,
  470 F.3d 30 (1st Cir. 2006) .................................................................................................... 5

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3rd Cir. 1998) ................................................................................................ 12

*\*Military Toxics Project v. EPA*,
  146 F.3d 948 (D.C. Cir. 1998) ............................................................................................... 6

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*,
  530 U.S. 604 (2000) ............................................................................................................... 7

*Nat'l Lime Ass'n v. EPA*,
  233 F.3d 625 (D.C. Cir. 2000) ............................................................................................... 3

*Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*,
  947 F. Supp. 2d 1031 (D. Ak. 2013) .................................................................................... 10

*Natural Res. Def. Council v. Costle*,
  561 F.3d 904 (D.C. Cir. 1977) ............................................................................................... 8

*Natural Res. Def. Council, Inc. v. Hodel*,
  865 F.2d 288 (D.C. Cir. 1988) ............................................................................................... 9

*Oceana v. Bureau of Ocean Energy Mgmt.*,
  37 F. Supp. 3d 147 (D.D.C. 2014) ......................................................................................... 3

*Roeder v. Islamic Republic of Iran*,
  333 F.3d 228 (D.C. Cir. 2003) ............................................................................................... 3

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) .................................................................................................. 6

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ............................................................................................... 5

*Sierra Club v. Glickman*,
  82 F.3d 106 (5th Cir. 1996) .................................................................................................. 3

*Sierra Club v. U.S. EPA*,
  995 F.2d 1478 (9th Cir. 1993) .............................................................................................. 9

*Suffolk Cnty. v. Sec'y of the Interior*,
  562 F.2d 1368 (2d Cir. 1977) ............................................................................................. 10

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*,
  275 F.3d 432 (5th Cir. 2001) ................................................................................................ 7

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ............................................................................................ 3, 7

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ........................................................................................................... 10

*Union Oil Co. v. United States*,
  512 F.2d 743 (9th Cir. 1975) ................................................................................................ 7

*WildEarth Guardians v. Jewell*,
  No. 16-cv-1724, Dkt. No. 19 (D.D.C. Nov. 23, 2016) ......................................................... 3

## **Statutes**

42 U.S.C. § 4321 .................................................................................................................... 1, 8

5 U.S.C. §§ 551, *et seq.* ............................................................................................................. 1

## **Rules**

Fed. R. Civ. P. 24 ................................................................................................ 1, 3, 5, 11, 12

## **Regulations**

30 C.F.R. § 550.201 ..................................................................................................................... 4

30 C.F.R. § 550.281(a)(1) ............................................................................................................ 4

30 C.F.R. §§ 250.410–418 ........................................................................................................... 4

30 C.F.R. §§ 250.465–469 ........................................................................................................... 4

30 C.F.R. §§ 550.211–235 ........................................................................................................... 4

30 C.F.R. §§ 550.241–273 ........................................................................................................... 4

# INDEX OF EXHIBITS

Exhibit 1: Proposed Answer, Defenses and Affirmative Defenses of Defendant-Intervenor American Petroleum Institute

Exhibit 2: Declaration of Erik G. Milito In Support of the American Petroleum Institute's Motion for Leave to Intervene

**INTRODUCTION AND BACKGROUND**

Pursuant to Fed. R. Civ. P. 24, the American Petroleum Institute ("API") respectfully moves for leave to intervene in the above captioned matter. Pursuant to Local Civil Rule 7(m), counsel for API consulted with counsel for Plaintiffs and the Federal Defendants regarding the relief requested herein. Counsel for the Federal Defendants has indicated that the Federal Defendants take no position on API's motion. Counsel for Plaintiffs has indicated that Plaintiffs do not oppose API's motion if API abides by the conditions on intervention imposed by this Court in the related case *Gulf Restoration Network, et al. v. Zinke, et al.*, No. 1:18-cv-01674-RBW, Dkt. No. 35, at 12–13 (D.D.C. Dec. 7, 2018).[1] In light of the Court's imposition of these conditions in the related litigation, API is for the purposes of this litigation only acceding to the limitations in this case.

### A. Plaintiffs' Legal Challenge.

This lawsuit challenges the conduct of an oil and gas lease sale on the federal outer continental shelf ("OCS") in the Gulf of Mexico by Defendants Secretary of the Interior, Assistant Secretary for Land and Mineral Development, the Bureau of Ocean Energy Management ("BOEM"), and the Department of the Interior (collectively, "Federal Defendants"). Plaintiffs Healthy Gulf, Sierra Club, and Center for Biological Diversity (collectively, "Plaintiffs") contend that the Federal Defendants' leasing action violated the National Environmental Policy Act ("NEPA), 42 U.S.C. §§ 4321, *et seq.* and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*, because it was allegedly taken "without an adequate understanding of the environmental effects," Complaint (Dkt. No. 1), ¶¶ 1, 8. More

---

[1] The Court (1) directed API not to "raise arguments or cite authority that have already been brought to the Court's attention by the [Federal] defendants," and (2) limited API's briefs on dispositive motions, "without further leave of Court based on good cause," to "twenty (20) pages, and reply briefs shall not exceed ten (10) pages." *Id.* at 12.

specifically, Plaintiffs allege that (1) "Interior turned a blind eye to the policies it had adopted[,]" "such as repealing significant drilling safety regulations," that "will considerably increase the effects and risks to the environment from oil and gas activities," and (2) improperly "assumed that the same environmental effects would occur even if it did not hold the lease sale," *Id.*, ¶¶ 6–7. To remedy the alleged NEPA violations, Plaintiffs ask the Court to, *inter alia*, vacate the challenged lease sale, and "[v]acate or enjoin leases executed pursuant to Lease Sale 252," *id.*, Relief Requested, ¶¶ 3–4.

B.     API's Interests in Plaintiffs' Legal Challenge.

API is the primary national trade association of the oil and natural gas industry, representing more than 600 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil. *See* Declaration of Erik Milito, ¶ 1 ("Milito Decl.") (attached as Exhibit 2 hereto). Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner. *See* Milito Decl. ¶ 2.

API's members are deeply engaged in the exploration for and development of offshore oil and gas resources as leaseholders, lease operators, and service companies, including in the Gulf of Mexico. *See* Milito Decl. ¶¶ 5–7. API's members are thus directly affected by the instant legal challenge. *See* Milito Decl. ¶ 8. To protect their interests, API is entitled to intervene in this action as of right, or, in the alternative, through permissive intervention. Indeed, this Court, the U.S. Court of Appeals for the D.C. Circuit, and federal courts elsewhere have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging Governmental actions with respect to oil and gas activities, including a related lease sale challenge before this Court. *See Gulf Restoration Network, et al. v. Zinke, et al.*, No. 18-cv-

01674-RBW, Dkt. No. 35 (D.D.C. Dec. 7, 2018) (granting intervention in NEPA challenge to Gulf of Mexico Lease Sales 250 and 251). *See also*, *e.g.*, *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (intervened in challenge to five-year leasing program); *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (intervened in challenge to lease sales and agency use of categorical exclusions to approve exploration plans); *WildEarth Guardians v. Jewell*, No. 16-cv-1724, Dkt. No. 19 (D.D.C. Nov. 23, 2016) (intervened in challenges to lease sales in Colorado, Utah and Wyoming); *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147 (D.D.C. 2014) (intervened in challenge to lease sales); *Defenders of Wildlife v. Minerals Management Serv.*, No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) (intervened in challenge to lease sale).

## I. API IS ENTITLED TO INTERVENE AS OF RIGHT.

Fed. R. Civ. P. 24(a) provides for intervention as of right if each of the following tests are met: (1) the motion is timely made, (2) the applicant claims a legally protectable interest relating to the property or transaction which is the subject of the action; (3) the interest could be impaired or impeded as a result of the litigation; and (4) existing parties do not adequately represent the applicant's interests. Fed. R. Civ. P. 24(a); *see Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). API's intervention satisfies each of these criteria.[2]

---

[2] For purposes of applying Rule 24 requirements, API may assert the interests of its members. An association may act on behalf of its members when its members would otherwise have standing in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See*, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000); *City of Waukesha v. EPA*, 320 F.3d 228, 233 (D.C. Cir. 2003). API's showing that Fed. R. Civ. P. 24 standards are met in this case also establishes that its members would themselves have standing. *See infra* pp. 4–10. *E.g.*, *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001). Representation in litigation is germane to API's overall purposes of advancing the interests of the oil and gas industry, and "mere pertinence between litigation subject and organizational purpose is sufficient." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000); *see also Sierra Club v. Glickman*, 82 F.3d 106, 108–10 (5th Cir. 1996) (goals of suit to limit farmers' water pumping germane to association purpose to advance farmers' interests); Milito Decl. ¶ 2. It is not necessary for API members to be (continued…)

### A. API Has Timely Moved For Intervention.

This motion to intervene is timely because it has been filed before the Federal Defendants have filed their answer, and before any non-ministerial action of the parties has taken place in this litigation other than the filing of the Complaint itself.

### B. API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding.

Offshore oil and gas development is carried out exclusively through private oil and gas companies, which acquire leases through a sealed bidding process and then engage in exploration efforts that, if successful, will lead to development and production. *See*, *e.g.*, 43 U.S.C. §§ 1337, 1340, 1351; Milito Decl. ¶ 5. Operations for the exploration and development of oil and gas resources on a lease—including drilling—are conducted pursuant to plans and permits that must be approved by the Department of the Interior. *See* 30 C.F.R. § 550.201; 30 C.F.R. §§ 550.211–235; 30 C.F.R. § 550.201; 30 C.F.R. §§ 550.241–273; 30 C.F.R. § 550.281(a)(1); 30 C.F.R. §§ 250.410–418; 30 C.F.R. §§ 250.465–469.

API members are directly engaged in the resulting exploration and production and have been for decades among the principal explorers and developers of offshore leases throughout the United States, and in the Gulf of Mexico OCS. *See* Milito Decl. ¶ 7. API members include leaseholders that have expended significant sums to obtain leases from the Government for the opportunity to explore for and develop valuable oil and gas resources. *See* Milito Decl. ¶ 5. Indeed, API members hold leases issued through Lease Sale 252, and are thus directly challenged by Plaintiffs in this action. *See* Milito Decl. ¶ 6.

---

included in this case individually, especially because no monetary relief is being sought. *See City of Waukesha,* 320 F.3d at 236; *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44 (1977). API thus satisfies the three requirements of associational standing.

Plaintiffs' claims that the Federal Defendants' decision to conduct the challenged lease sale failed to meet NEPA's directive to take a "hard look" at the alleged environmental impacts of future exploration and drilling activities on issued leases, *see*, *e.g.*, Compl., ¶¶ 148–68, and the Court should therefore void or enjoin all of the leases issued during the challenged lease sale, *see id.*, Relief Requested, ¶¶ 3–4, thus directly affects the members' property and contractual interests. Milito Decl. ¶¶ 5–8. At a minimum, the requested injunction pending a potentially lengthy NEPA review process to correct the alleged errors in the decision leading to Lease Sale 252, could substantially delay these activities of API members. *See* Milito Decl. ¶ 9.

Although Governmental agencies and officials are named as the defendants, in practice, the exploration and drilling activities of API's members are the "object of" the agency action that Plaintiffs' lawsuit challenges—Federal Defendants' decision to conduct Lease Sale 252, and the issuance of offshore leases during that sale. This clearly qualifies API for intervention as of right. *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (party has standing when its activities are the ultimate object of the legal challenge); *see also*, *e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *In re City of Fall River, Ma.*, 470 F.3d 30, 31 (1st Cir. 2006) (recognizing that intervenor's application to export natural gas was "Petitioners' ultimate target" in seeking to compel agency to issue regulations); Fed. R. Civ. P. 24 advisory committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

Ultimately, Plaintiffs ask this Court to end the activities of API members, and eliminate their leases. *See* Compl., Relief Requested, ¶¶ 3–4. Private parties may intervene in defense of

5

challenged conduct when their interests could thus be directly affected. *See Fund for Animals*, 322 F.3d at 733 (foreign governmental agency may intervene in defense of legal challenge to federal regulations that would, if successful, limit sport hunting by U.S. citizens in that country; the country's sheep "are the subject of the disputed regulations"); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor.").

In this regard, API's members are in a similar situation as the members of the association seeking intervention in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998). The plaintiffs there challenged an EPA rule excluding munitions from stringent hazardous waste regulation, and the D.C. Circuit held that the Chemical Manufacturers Association ("CMA") had standing to intervene in defense of the EPA rule:

> CMA has standing because some of its members produce military munitions and operate military firing ranges regulated under the Military Munitions Rule. These companies are directly subject to the challenged Rule, and they benefit from the EPA's "intended use" interpretation (under which most military munitions at firing ranges are not solid waste) . . . that the [petitioner] is challenging in this appeal. These CMA members would suffer concrete injury if the court grants the relief the petitioners seek; they would therefore have standing to intervene in their own right, and we agree with the litigants that the CMA has standing to intervene on their behalf in support of the EPA.

146 F.3d at 954.

API likewise has Article III standing—and thus a sufficient interest to support intervention—here because its members own leases and conduct, *inter alia*, exploration, development, and drilling operations, and are thus engaged in activities that are "directly subject to the challenged" Government policy, and "would suffer concrete injury if the court grants the relief petitioners seek," *i.e.*, voiding challenged leases and subjecting the Federal Defendants' reissuance of those leases to new, broad, and uncertain environmental review. *Id*. *See also*, *e.g.*,

6

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had Article III standing and sufficient interest to intervene where lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's] members"); *Fund for Animals*, 322 F.3d at 733–34 (agreeing that Article III standing exists where "injury is fairly traceable to the regulatory action . . . that the [plaintiff] seeks in the underlying lawsuit" and "it is likely that a decision favorable to the [applicant for intervention] would prevent that loss from occurring"); *id.* at 734 (in identifying a qualifying injury under Rule 24(a), "we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property"); *Atlantic States Legal Found., Inc. v. EPA*, 325 F.3d 281, 282, 285 (D.C. Cir. 2003) (intervention by trade association of utilities regulated by EPA regulation).

Moreover, standing is found and intervention warranted here by an additional consideration. Oil and gas leases constitute both contracts, *see*, *e.g.*, *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607–08 (2000), and property interests, *see*, *e.g.*, *Union Oil Co. v. United States*, 512 F.2d 743, 747 (9th Cir. 1975), and by seeking to void, or forestall exploration or development on, already purchased leases, Plaintiffs would cause an injury to API members by requesting "an agency [action] that replaces a certain [contract] outcome with one that contains uncertainty," *Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002). *See also Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 967 (D.C. Cir. 1999) (granting intervention by party "which purchased the great majority of the licenses awarded" under the existing rule); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests.").

In addition, API's members undoubtedly satisfy prudential standing in this litigation because their activities are the "subject of the contested regulatory action," *Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004) (quotation omitted)—namely, the Federal Defendants' issuance to them of leases. Furthermore, the interests of API members correspond with NEPA's "national policy" to "encourage productive and enjoyable harmony between man and his environment," 42 U.S.C. § 4321; *see* Milito Decl. ¶ 2. *See also*, *e.g.*, *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (With respect to prudential standing, a party's interests need only "*arguably* fall within the zone of interests protected *or regulated* by the statutory provision" at issue) (emphasis added); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987) (holding that trade associations had standing, because even "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the [zone of interest] test denies a right of review [only] if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.").

Finally, the Court's disposition of this action would impair the ability of API (and its members) to protect their interests. The impairment prong of Rule 24(a) "look[s] to the practical consequences of denying intervention." *Natural Res. Def. Council v. Costle*, 561 F.3d 904, 909 (D.C. Cir. 1977) (quotation omitted). It is irrelevant whether the applicant "could reverse an unfavorable ruling" in subsequent proceedings because "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds . . . will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735.

Here, API's members *currently* own leases and obtain approval of their activities through longstanding NEPA policies and procedures of the Federal Defendants, and would face practical difficulty in restoring the status quo following a victory by Plaintiffs voiding or enjoining the leases and requiring Federal Defendants to conduct additional NEPA reviews. At a minimum, such action would impose a lengthy administrative delay and related costs and uncertainty upon API members. *See Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (fishing group may intervene to defend lawsuit seeking to force government to change regulatory status quo, when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future") (citation omitted). *Cf. Humane Society of the U.S. v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (sufficient interest of recreational hunting and trapping groups in "present right of their members to hunt and trap on public lands"). At worst, any subsequent lawsuit filed by API to restore the status quo "would be constrained by the *stare decisis* effect of" the present lawsuit, thereby supporting intervention in this initial lawsuit. *See Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993), *abrogated on other grounds*, 630 F.3d 1173 (9th Cir. 2011).

For all these reasons, API is entitled to intervene. Indeed, the D.C. Circuit and federal district courts have routinely and repeatedly permitted oil industry trade associations to intervene on behalf of their members' interests in litigation involving oil and gas leasing and operations. *See supra* pp. 2–3; *see also e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466 (D.C. Cir. 2009) (API granted intervention in challenge to Government's five-year OCS leasing program under NEPA and OCS Lands Act); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 293 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (same); *California v. Watt*, 668 F.2d 1290, 1294 n.1 (D.C. Cir. 1981) (same); *Alaska v.*

*Andrus*, 580 F.2d 465 (D.C. Cir. 1978) (Western Oil and Gas Association granted intervention in defense of first OCS lease sale offshore Alaska); *Suffolk Cnty. v. Sec'y of the Interior*, 562 F.2d 1368 (2d Cir. 1977) (National Ocean Industries Association granted intervention in defense of first Atlantic OCS lease sale); *Diné Citizens Against Ruining our Env't v. Jewell*, No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) (intervened in challenges to drilling permits); *Envt'l Defense Ctr. v. Bureau of Safety and Envt'l Enforcement*, No. 14-cv-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015) (intervened in challenges to drilling permits); *Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*, 947 F. Supp. 2d 1031 (D. Ak. 2013) (intervened in challenge to geological and geophysical survey permit).

### C. API's Interests Will Not Be Adequately Protected By Plaintiffs Or Defendants.

An applicant for intervention need only show that representation of its interest by an existing party "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972); *Fund for Animals*, 322 F.3d at 735 (citing *Trbovich*). The burden of the applicant in meeting that test is "minimal." *Id*.

In this case, Plaintiffs' position is inimical to that of API, and the Federal Defendants' "obligation is to represent the interests of the American people . . . while [API's] concern is for" the interests of its members, *see Fund for Animals*, 322 F.3d at 736 (granting intervention). As the Supreme Court explained in *Trbovich*, a government agency cannot be characterized as able adequately to represent the interests of an intervenor if the agency has substantially similar interests to a potential intervenor, but has a statutory charge to pursue a different goal as well. *Trbovich*, 404 U.S. at 538–39. Here, while the goals of NEPA include the interest of API's members in the exploration and development of offshore resources, *see supra* p. 8, NEPA's goals are not limited to those interests, *see* 42 U.S.C. § 4321.

Although the Federal Defendants' and API's interests could be expected to coincide in defending the claim of violations asserted in this action, these differing goals support API's intervention as of right. As the D.C. Circuit has recognized, the Government "is charged by law with representing the public interest of [all] its citizens" rather than the "narrow and 'parochial' financial interest" of API's members. *Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986). Because the interests of API's members "cannot be subsumed within the shared interests of the citizens [at large], no presumption exists that the [Government] will adequately represent [their] interests." *Id*. at 193. *See also Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C. 2007) (finding representation inadequate where applicant "has a financial interest . . . that is not an interest shared by the public"); *Fund for Animals*, 322 F.3d at 736–37 (noting that early general agreement and "tactical similarity" with parties "does not assure adequacy of representation") (citation omitted).

Because their interests are not adequately represented by either the Plaintiffs or the Federal Defendants, API should be allowed to intervene in this case as of right.

## II. IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b).

Fed. R. Civ. P. 24(b)(1) and (3) provide in pertinent part:

> On timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact…. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties….

API's and the Federal Defendants' defenses to the Complaint will involve common questions of law—for example, the standards imposed by NEPA and the Administrative Procedure Act—and fact regarding the Federal Defendants' fulfillment of their obligations under the statutes upon which the Complaint relies. In addition, as shown above, API has a substantial interest in the outcome of this litigation. Moreover, this litigation's basic simplicity as a

primarily legal dispute belies any concern that API's intervention will result in prejudice to the original parties, and, at any rate, API's intervention vindicates "a major premise of intervention—the protection of third parties affected by pending litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3rd Cir. 1998). Finally, API applied to intervene in a timely manner, and no delay or prejudice can be shown to the rights of the original parties herein. Thus, if the Court did not allow API to intervene as of right, it should allow API permissive intervention in the exercise of its sound discretion.

## CONCLUSION

For the foregoing reasons, API meets the requirements for intervention pursuant to both Fed. R. Civ. P. 24(a) and 24(b). API respectfully requests that this Court grant this motion for leave to intervene in this proceeding.

A proposed Order is submitted herewith. As required by Fed. R. Civ. P. 24(c), API has included with this motion, as Exhibit 1 hereto, its proposed Answer to the Complaint.

Respectfully submitted,

*/s/ Steven J. Rosenbaum*
Steven J. Rosenbaum
 D.C. Bar No. 331728
Bradley K. Ervin
 D.C. Bar No. 982559
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
Fax: (202) 662-6291
srosenbaum@cov.com

May 21, 2019

*Attorneys for Applicants for Intervention*

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2019, I caused a true and correct copy of the foregoing Motion for Leave to Intervene and all accompanying attachments, to be filed with the Court electronically and served by the Court's CM/ECF System upon the listed counsel for Plaintiffs, while the listed counsel for Federal Defendants was served by email:

| | |
|---|---|
| Christopher D. Eaton<br>Stephen D. Mashuda<br>Earthjustice<br>705 Second Ave., Suite 203<br>Seattle, WA 98104<br>Tel: (206) 343-7340<br>Fax: (206) 343-1526<br>ceaton@earthjustice.org<br>smashuda@earthjustice.org<br><br>Brettny Elaine Hardy<br>Earthjustice<br>50 California St., Suite 500<br>San Francisco, CA 94111<br>Tel: (415) 217-2142<br>Fax: (415) 217-2040<br>bhardy@earthjustice.org<br><br>*Counsel for Plaintiffs* | Thomas Ports, Jr.<br>Environment & Natural Resources Division<br>United States Department of Justice<br>Washington, D.C. 20044<br>Tel: (202) 305-0492<br>Thomas.Ports.Jr@usdoj.gov<br><br>*Counsel for Federal Defendants* |

                                           */s/  Steven J. Rosenbaum*
                                           Steven J. Rosenbaum
                                           COVINGTON & BURLING, LLP
                                           One CityCenter
                                           850 Tenth St., N.W.
                                           Washington, D.C. 20001
                                           Phone:  (202) 662-6000
                                           Fax:  (202) 662-6291
                                           srosenbaum@cov.com